# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2653

_____

William B. Butler; Mary S. Butler, individually and as
representatives for all others similarly situated

*Plaintiffs - Appellants*

v.

Bank of America, N.A.; BAC Home Loans Servicing, L.P.;
Peterson, Fram & Bergman, P.A.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 17, 2012
Filed: August 27, 2012

_____

Before RILEY, Chief Judge, BYE and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Mary and William Butler ("the Butlers") brought this lawsuit in Minnesota state court challenging the foreclosure of the mortgage on their home. The complaint named as defendants Bank of America, N.A., BAC Home Loan Servicing (collectively, "the Bank Defendants"), and the law firm of Peterson, Fram, and

Bergman, P.A. ("PFB"). The Bank Defendants removed the case to federal court and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), as did PFB. The district court[1] granted the motions to dismiss for failure to state a claim, and the Butlers timely appealed. We affirm.

I

On October 6, 2006, the Butlers borrowed $280,000 from Marshall & Isely Bank for the purpose of purchasing a home in Hennepin County, Minnesota ("the property"). The Butlers signed a note promising to repay the loan and executed a mortgage pledging the property as security for their promise to repay. Mortgage Electronic Systems, Inc. ("MERS") was designated as the mortgagee and nominee for the lender. The mortgage provided that if the Butlers defaulted on their note, the lender "may require immediate payment in full . . . and may invoke the power of sale and any other remedies permitted by [a]pplicable [l]aw." Appellant's App. at 190.

On February 16, 2010, BAC Home Loan Servicing, as the servicer of the mortgage and note on behalf of the note holder, sent the Butlers a "Notice of Intent to Accelerate," informing the Butlers the loan was in serious default. The notice further informed the Butlers that unless the arrearage was paid in full within one month, the lender would initiate a foreclosure by advertisement. The Butlers did not pay.

On April 19, 2010, MERS assigned the mortgage to BAC Home Loan Servicing. The assignment was recorded on May 19, 2010. On the same day, PFB, acting as counsel for BAC Home Loan Servicing, issued a notice of pendency, formally announcing its intent to initiate a foreclosure by advertisement proceedings

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

on the mortgage. The foreclosure was indeed initiated and was completed by a valid sheriff's sale on July 23, 2010, at which time BAC Loan Servicing took title to the property.

On January 21, 2011, the Butlers filed the instant action in Minnesota state court challenging the validity of the foreclosure on the property.[2] The Butlers brought the action on their own behalf and on behalf of a putative class of "all individuals who initiated mortgage loans with Countrywide and whose loans were subsequently allegedly acquired by [Bank of America]." Complaint ¶¶ 93-98. The complaint enumerated sixteen causes of action: (1) "The Mortgage [is] Invalid and Unenforceable;" (2) "Slander of Title;" (3) "Defendants are Not Holders in Due Course of the Original Note;" (4) "Due Process Violation;" (5) "Defendants Do Not Have Legal Standing to Foreclose [the] Mortgage;" (6) "Defendants are Not Real Parties in Interest;" (7) "Fraud;" (8) "Negligent Misrepresentation;" (9) "Unjust Enrichment;" (10) "Declaratory Judgment—Original Note is Void as Negotiable Instrument;" (11) "Equitable Estoppel;" (12) "Qui Tam—Private Attorney General Enforcement of Minn. Stat. §§ 357.18, 508.82, 508A.82;" (13) "Third Party Beneficiary;" (14) "Accounting;" (15) "Class Action Allegations;" and (16) "Demand to Exhibit the Original Note."

---

[2]The instant lawsuit, in which William Butler represented himself, seems to have been one of the first in a series of lawsuits brought by Butler to challenge the validity of foreclosure proceedings in Minnesota under the so-called "show-me-the-note" theory. Welk v. GMAC, Mortgage, LLC, No. 11-CV-2676, 2012 WL 1035433, at *2 (D. Minn. March 29, 2012). As one district court recently observed, since the present action, Butler has filed some nearly thirty cases "on behalf of a total of perhaps a couple of hundred plaintiffs[,] in which he has challenged the validity of the mortgages on his clients' properties" under that theory. Id. "A plaintiff bringing a show-me-the-note claim generally argues that, because the entity that holds [his] mortgage (say, MERS) is not the same as the entity that holds [his] note (say, U.S. Bank), the mortgage on [his] home or the foreclosure of that mortgage is invalid." Id. at *1.

The Bank Defendants removed the case to federal court, and subsequently filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  PFB also moved to dismiss or, in the alternative, moved for a more definite statement.  The Butlers opposed the respective motions and filed a motion to remand the case to state court.  On July 13, 2011, the district court issued a memorandum opinion and order denying the Butlers' motion to remand and dismissing the complaint in its entirety, with prejudice.  The district court explained all sixteen causes of action asserted in the complaint were premised on a single theory—the theory that the foreclosure of the property is invalid because the entity holding the mortgage, BAC Home Loan Servicing, does not also hold the promissory note (*i.e.*, the "show-me-the-note" theory).  Observing Minnesota law clearly forecloses this argument, the district court dismissed the claims against the Bank Defendants.  Further, because the complaint failed "to identify a single factual allegation of wrongdoing on behalf of" PFB, the district court dismissed the Butlers' claims against the law firm.  The Butlers timely appealed.

II

We review *de novo* the district court's grant of a motion to dismiss an action for failure to state a claim under Rule 12(b)(6), taking the factual allegations in the complaint as true and affording the non-moving party all reasonable inferences from those allegations.  Palmer v. Ill. Farmers Ins. Co., 666 F.3d 1081, 1083 (8th Cir. 2012).

On appeal, the Butlers first challenge the dismissal of their claims against PFB, asserting the complaint sufficiently alleged facts tending to show PFB committed fraud. We disagree.  The complaint references PFB twice: once in the caption of the lawsuit, as a named defendant, and once in paragraph 20, which in its entirety states: "Peterson, Fram & Bergman, P.A. ("PFB") is a law firm with principal offices located at Suite 800, 55 East Fifth Street, St. Paul, Minnesota 55101."  The complaint does

-4-

not set forth any allegations of wrongdoing on the part of PFB and we decline the Butlers' invitation to read certain paragraphs in the complaint, which allege, generally, that defendants recorded documents containing materially false information and falsely represented the status and validity of the mortgage, as implicating fraud on the part of PFB. See Appellant's Br. at 15 (referencing paragraphs 27-32 and 54-59 of the complaint). Such general allegations are not only insufficient to state a claim for relief that is plausible on its face, see Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (stating that although a complaint need not contain "detailed factual allegations" to withstand dismissal, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]"), but are also utterly inadequate to meet the requirement of pleading fraud with particularity, see BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (explaining a party alleging fraud must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained and given up thereby"). We therefore conclude that the lack of any factual allegations regarding PFB renders the Butlers' complaint deficient and the district court did not err in dismissing it for failure to state a claim.

The Butlers next challenge the district court's dismissal of their claims against the Bank Defendants, asserting the district court erroneously characterized their claims as a single "show-me-the-note" claim rather than as a quiet title action. We have carefully reviewed the factual allegations in the Butlers' complaint and have cautiously examined each of the sixteen causes of action the complaint advances. We find no merit to any of them. Instead, we agree with the district court the Butlers' numerous causes of action are simply an attempt to invalidate the foreclosure on the property based on the flawed theory the mortgage and the foreclosure of that mortgage are invalid because BAC Home Loan Servicing—the entity holding the mortgage—does not also hold the note. This theory is foreclosed by the plain language of Minnesota's foreclosure-by-advertisement statute, see Minn. Stat. § 580.02, by the Minnesota Supreme Court's decision in Jackson v. Mortgage

Electronic Registration Systems, Inc., 770 N.W.2d 487 (Minn. 2009), and by our decision in Stein v. Chase Home Finance LLC, 662 F.3d 976 (8th Cir. 2011). Under Minnesota law, BAC Home Loan Servicing, as the legal and record holder title of the mortgage, could undeniably initiate foreclosure proceedings on the property upon the Butlers' failure to repay the loan, as promised in the note. See Minn. Stat. § 580.02 (providing, in relevant part, that a party may foreclose so long as "some default in a condition of [the] mortgage has occurred, by which the power to sell has become operative" and "the mortgage . . . and all assignments have been recorded"); see also Stein, 662 F.3d at 980 (holding "the right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable, holder of the mortgage" and concluding a party may commence foreclosure proceedings, even if it does not hold the promissory note, as long as the party is the mortgagee of record and holds the legal title to the mortgage); Jackson, 770 N.W.2d at 500. Without wasting any further judicial resources in resolving this borderline frivolous lawsuit,[3] we

---

[3]It seems Mr. Butler has fallen into a certain "pattern" since filing this action. This pattern seems to be as follows:

> Butler takes a group of a dozen or so individuals who are facing foreclosure but otherwise have no connection to one another; he gins up a dozen or so claims against a dozen or so defendants grounded mostly on the show-me-the-note theory; he improperly packages these claims into a single state-court action; and he fraudulently joins a single nondiverse defendant (typically a law firm that represented one of the lenders in foreclosure proceedings) in an attempt to block removal to federal court. The defendants generally remove the cases to federal court, and Butler then moves to remand. If the judge denies Butler's motion, he might "remand" the case himself by voluntarily dismissing it and refiling it in state court within a day or two, thereby starting the process all over again. Butler might also "judge shop" in the same manner; if he does not like his chances before a particular federal judge, he might voluntarily dismiss his case, promptly refile it in state court, and start the process all over again. To hide his conduct, Butler will

conclude the district court properly dismissed the Butlers' claims against the Bank Defendants.

III

The judgment of the district court is affirmed.

_____

reorder the names of the plaintiffs or substitute a new plaintiff for one of the old plaintiffs, so that the refiled case will have a different caption.

When Butler's claims are finally challenged on the merits, he makes false representations and spins out contradictory and often absurd arguments in the apparent hope that their sheer weight and number, multiplied by the number of parties and claims, will overwhelm his opponents and the court. Butler makes claims in his briefs that do not appear in his pleadings; he makes claims during hearings that do not appear in either his briefs or his pleadings; and, when ordered to show cause why he should not be sanctioned, he makes claims in his response that he did not make during the hearing or in his briefs or pleadings.

Welk, 2012 WL 1035433, at *2. We recognize these are serious allegations, but we do not take lightly any attempts to manipulate the judicial process in a desperate strive to avoid the inevitable. We want to remind Mr. Butler that by "presenting to the court a pleading, a written motion, or other paper . . . [he] certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonably under the circumstances . . . the claims, defenses , and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).